Okay, Mr. Romanofsky. Good morning. May it please the court, the issue in this case is whether the discretionary function exception bars Mr. Tsolmon's claims under the FDCA. The district court decided that it did and granted the government's motion to dismiss. We respectfully disagree. We believe that the law enforcement proviso contained in 28 U.S.C. 2680H, that specifically lists false arrests and false imprisonment by law enforcement officers, an independent waiver of sovereign immunity that is not subject to 2680A, the discretionary function exception. But most importantly, the discretionary function exception does not apply because the misconduct in this case did not involve any discretionary function. The CBP agents had no choice but to arrest Mr. Tsolmon because there was a policy in place that required them to do so. As Agent Wilson testified, he believed that Mr. Tsolmon was in the country illegally, but he could not release him for fear of losing his job. Not only did the policy eliminate any discretion on the part of the arresting officers, it did so in direct violation of 8 U.S.C. 1357A2, which gave the officers the power to arrest only if, one, they believed that Mr. Tsolmon was in the country illegally, and two, they believed that Mr. Tsolmon was likely to escape. The agents did not perform this analysis. The agents could not perform this analysis. If the agents could perform the analysis, they would have released Mr. Tsolmon, and we would not be here today. As this court held in Sutton and most recently in Gibson, the discretionary function exception does not apply if the challenged actions in fact violated a federal statute or regulation. But you're saying that that's the situation where an agent violates a statute, he's doing something wrong. Here you're challenging the fact that they followed a policy, and your real problem is with the policy. So why should these individuals be held accountable as opposed to challenging the any lawful authority? And that's actionable under the FDCA. You're saying they complied with the policy, not that they violated it, right? Exactly, and this is why they had no discretion. So the government's argument was that it was a discretionary act, whether to arrest or not arrest, and we're arguing that there was no discretion. And to the extent that the person who adopted the policy had discretion, maybe they did have discretion to do so, but that discretion does not count because the policy is in violation of the statute. It's a faulty policy. You cannot have a policy that violates a federal statute. I want to quote the supervising officer here, Agent Stanley. We are a federal law enforcement agency. We enforce the law in all United States and outlying territories. I can make any arrest any day of the week, any time of the day, and throw them in jail. This cannot happen. The officers have to respect the law. We cannot give CBP unlimited power to pull anyone off a bus and throw them in jail without some degree of protection. We cannot let them arrest people for suspected immigration violations when they have no ability to verify someone's immigration status. Well, if your client had had his immigration papers on him, as the law requires, none of this would have happened, right? He wouldn't be here. That is actually not correct. Let me quote the Kerry the Papers law contained in 8 U.S.C. 1304, which says, I apologize, every alien 18 years of age and over shall at all times carry with them and have in his personal possession any certificate of alien registration or alien registration receipt card. This is an old law, and it is very difficult to enforce it in this day and age because there is no certificate of alien registration. A green card would be something close to it, but in the case of Mr. Zolman, the only evidence of his lawful status was a piece of paper that advised them that his status is now H1, which is work visa status. There's no certificate of registration. There's no secure document. There's no passport. There's no card that the officer can, it's just a piece of paper. That's number one. Number two, we have continued to maintain that Mr. Zolman did have that piece of paper on his phone. There was an image on his phone. And because it's not a secure document, it shouldn't really matter whether an image on the phone is defective compared to a regular piece of paper. And this is something, as far as I know, this is an issue that has not been decided in the circuit, but Mr. Zolman did provide an image of that piece of paper to the arresting agent. That's number three. He was charged with a violation of 1304. He was not. He was charged as an overstay. And from the deposition of the arresting officers, it's clear that CBP doesn't really arrest people for a violation of 1304. So, and number four, from the deposition of the arresting officer, it is clear that even if Zolman had had an actual piece of paper, he would still have been arrested. Because Agent Wilson said that a piece of paper is not enough, and he needed to see an actual EAD card. Just to explain to this court, an EAD card is an employment authorization document, which is issued in certain cases, but not in others. For example, when somebody applies for a change of status, just like Mr. Zolman did, from student to H-1B, which is a worker status, again, there is no employment authorization card. There is no EAD card, as Agent Wilson put it. It's just a piece of paper. So what Agent Wilson said, even if we had seen this document, we would have still needed to verify his status. And this is where, you know, the lack of ability to verify Zolman's status comes into play again. They had no idea how to do that. They couldn't verify his status. They had all the information in the world that they needed to verify his status. They didn't. So even if, assuming, again, we continue to maintain that Zolman did have his EAD card, the district court had to assume the facts as true, that there was an image on the phone that Zolman presented to the officer. But even if Zolman had not had his papers with him at all, even if Zolman had an actual piece of paper, let's say, he would have ended up in jail anyway, because he had no EAD card. And there is no EAD card in this situation. Agent Wilson was not trained in immigration law. He lacked the information necessary to verify Zolman's status. So in response to Your Honor's question, he did have his papers. And even if he hadn't had his papers with him, it's still not, he was not charged under 1304. He was charged as an overstay. Just to, I just want to make sure that the court has a clear picture of what happened that day. So Mr. Zolman was traveling Friday night on the bus. The bus was stopped. The agents boarded the bus. Mr. Zolman was taken off the bus because he was not a U.S. citizen. He provided all the arresting agent as proof of his legal status in the United States. He had a Texas ID, which is only issued to someone who has legal status. There was an immigration status notation on the Texas ID indicating that he was in fact in valid immigration status. All of that was not enough. Mr. Zolman was taken to the CBP station. Then he was put in jail for the weekend. And only when another officer came in on Sunday, who apparently had the knowledge to verify Zolman's immigration status, the status was verified and he was released. There was no additional information supplied to the officers between the time he was arrested and the time he was released. It was just a matter of somebody working that Friday night who had no ability, no training, no resources to verify Zolman's immigration status. Once again, I want to reiterate the fact that there was no discretion in the acts of Agent Wilson and Agent Lewandowski. Therefore, the discretionary function exception simply cannot apply. It only applies to cases where agents use their judgment. Didn't you just say this guy who came in Sunday exercised his discretion in a better manner by verifying that your client was in fact here on a visa? No, he wasn't exercising his discretion. He actually did the job that the other people were supposed to do on Friday night. It wasn't discretionary. It wasn't in the government's discretion to verify or not verify their status. If they're taking him off the bus, they have to verify his status. So it was absolutely not discretionary. And if they'd done it initially in a non-negligent manner, this whole, he wouldn't have been there till Sunday. That's correct. That's absolutely correct. I have nothing. You've saved time for rebuttal. Thank you. Thank you so much. Mr. Frank. May it please the Court. My name is Steve Frank from the Department of Justice on behalf of the appellee, the United States. This is, of course, an FTCA case, which is a limited waiver of sovereign immunity. But as the Court is well aware, there are exceptions to that waiver. One of them, and the one that's before this Court, is the discretionary function exception. There's a two-part test under Gobert. First, did the government or was the government exercising some discretion, or was there a mandatory requirement? The second is, is, was that analysis? Plaintiff has not addressed at all the second step, so we assume that he's waived that. So the sole question really before this Court is whether or not in conducting this investigation and in doing what it did, whether the government was exercising its discretion. And the important point, which I think Judge Costa mentioned, alluded to, is that the discretionary function exception, in the language of that exception, it applies even if the discretion is abused. So it's, it's a defense for the government even if the government is negligent. As long as they're exercising discretion, that's an exception. So plaintiff's main complaint throughout this whole case is that the government was negligent. The government could have done, should have done a better job of checking out this gentleman's bona fides during the course of this weekend. And the district court made no excuse for that. The district court, Judge Atlas, wrote a very thorough 44-page opinion addressing all of these questions. And in it, she said she did not condone any negligence that might have been done, their failure to find out this gentleman's H-1 status earlier. But she said that does not stop the discretionary function from operating. The Court is well aware of the numerous cases that have found a FTCA case barred by the discretionary function, even if the government commits some form of negligence. Because, as I said, by its very words, it applies even if the discretion is abused. So the discretion that is at issue here is the statute. There is a statute which actually plaintiff sets out in full in his opening brief on page 16. It's 8 U.S.C. 1357A2. And so the statute authorizes an immigration official to issue a notice to appear. Basically, it's an arrest warrant. Okay? To issue that, and it authorizes him to do that, if two conditions are met. One, he believes that, or has a reasonable belief, that the law has been violated. And the second is, if he has a reasonable belief, that the person is likely to escape before he appears in court. And the key factor there is that that statute does not mandate one thing or another. It does not mandate that the official issue a notice to appear. It gives him the discretion, based upon those two factors, to decide and to determine in his own belief whether those factors are met, and then whether to issue the notice to appear, the arrest warrant. So once the Court decides, as Judge Atlas did, that that statute is discretionary, and I don't think there's any question but that it is discretionary, that pretty much ends this case. The other point that I want to make is that plaintiff is focusing and has focused on he hasn't made clear what the challenged conduct is. You have to look in the discretionary function at what is the challenged conduct and see was that discretionary. Judge Atlas, in her opinion, goes on at length. Let me see if I can find it. It is, in her opinion, at page 24 of her opinion, she says that this policy, the policy that Plaintiff's referring to, which is that after, after a notice to appear has been issued, that she says that policy, which Your Honor points out is also discretionary, whether to issue that policy, is not the complaint of conduct. She says Plaintiff challenges the conclusions of the agents drew from their investigation of Plaintiff's immigration status and the basis and timing of the agent's decision to issue a notice to appear charging Plaintiff with being an alien illegally present in the United States, which resulted in the NTA being issued, which then also resulted in a, about a 30-hour incarceration. So what Judge Atlas did is she focused on the challenged conduct. The challenged conduct was the decision, they went on the bus, they were looking around. These kind of investigations and stops have been upheld by the Supreme Court and this Court. They asked this gentleman for his papers. As the Court recognized, if this gentleman had been carrying his papers as required by law, we wouldn't be here today. But he wasn't. So the agents, in my view, went to great length, were very patient, tried to find his proper identification papers. They called his roommate. They called his mother. They checked as best they could. Maybe they could have done better. Maybe they were even negligent in punching in the right numbers. But that doesn't do away with the discretionary function exception. And so what Judge Atlas did is she looked to see what is the challenged conduct. The conduct was they're stopping him, they're investigating him, they're issuing, okay, the notice to appear. And there are two cases which are cited in our brief, two directly on point. The first one is, I can't pronounce it, sorry, N-G-U-Y-E-N, out of this Court, 65 Federal Appendix 509. It's cited in our brief. And the Court held that decisions made by immigration agents during the course of an immigration status are discretionary in nature. There's also another case which is really directly on point. It's a district court case. We've cited it, Hodgson. And there it's right on point that after a notice to appear was issued, the gentleman was detained, but the Court said that detention is not the  The challenged conduct was the investigation. And there's a whole range of cases that hold that an investigation, looking into a prosecution, all of that is discretionary. The main point that Plaintiff makes, I think he misses the point with all due respect, is the notion that simply because he was detained at the end of the day and there was a policy to detain someone, that that eliminates the entire, all of the other discretionary activities that took place in this case. And that's just not the case. It was discretionary to stop the bus. It was discretionary to check this gentleman's papers. It was discretionary to take him off the bus to look. And the most important thing is that it was discretionary under the statute to issue the notice to appear. Now, once you issue the notice to appear, the fact that it was not discretionary, whether to let him go or not, is really irrelevant. I really don't see the point in that. It's like saying, I mean, 8 U.S.C. is a discretionary that gives the agent the authority to arrest someone. Now, unless I'm wrong, usually when you arrest someone, they're detained. And so the mere fact that they are detained automatically until maybe a bail hearing or something like that doesn't wipe out the fact that everything that went before is discretionary. Okay? That's just the result of making a discretionary decision. I mean, otherwise, there's a lot of actions that the Immigration Service makes where people are briefly detained, and that would wipe out the discretionary function in all of those cases. I mean, there's a statute, 8 U.S.C. 1231, I believe it is, which automatically requires that after a removal proceeding, if someone is ordered removed, they are ordered to be detained for 90 days. He's saying the statute is unlawful or the policy is unlawful. I mean, is that an avenue of relief in an FTCA claim? It seems to me an FTCA claim is typically challenging tortious conduct on behalf of certain officers. I mean, is it a vehicle for challenging the lawfulness of a statute or policy? I'm sorry. I'm having trouble hearing. Are you asking whether that's a proper way to challenge a statute? Right. Is this lawsuit a proper way to — he's saying this policy is unlawful, not in compliance with the immigration laws. Can he achieve that relief in an FTCA suit against these individuals? I mean, the FTCA cases I see typically are for damages, alleging tortious conduct by government employees. Yes. I think Your Honor is correct. I think he would have to show that — not challenge the policy. And I'm not sure — again, I'm not sure what he's challenging, whether he's challenging this policy to detain. And I don't really see, again, what that policy adds to the statute, because the statute gives the authority to detain. So I'm not really sure where that fits in. He's not arguing, I don't think, that that policy is unlawful. And I don't think he's arguing — maybe he's arguing that the policy might be. This might be his argument. It is inconsistent with the statute, but I would agree with Your Honor, it's not the place to do that. And I don't think it is inconsistent with the policy, because the policy gives — gives the officer the opportunity to arrest someone. And the main thing is that this policy is — is discretionary. Every time you arrest someone, you're going to detain them for a little while, at least until they have a bail hearing. That doesn't mean that everything that went before, all the decision-making, the prosecutorial discretion, everything was — was not discretionary merely because you were going to detain them for a while. I — the — the only other thing, really, that I have to — to add is plaintiff said right at the very beginning, I don't think he really meant to make a big issue of it, but I just want to note it. He mentioned the law enforcement proviso as another waiver of — of sovereign immunity, which it is, but plaintiff did not raise that at all in his briefs before this Court. It was raised in the lower court, and Judge Atlas dealt — it's a — it's an interesting and complex legal question. The interplay between the law enforcement proviso and the discretionary function exception, the Sutton case is the law of this circuit on that issue. It's kind of — the circuits are split on that issue. But Judge Atlas applied the Sutton analysis here and held that the law enforcement proviso did not trump the discretionary function exception. We think she got that right along with everything else, and plaintiff did not — did not raise it. So I don't think the Court really needs to consider it. I — I don't want to take up more of the Court's time than I need to, but I'd be happy to answer any other — any other questions. Thank you, Mr. Frank. Okay. Thank you. Mr. Romanofsky. Ms. Pollard, let's give Mr. Romanofsky his full five minutes because he didn't use up his opening time. I appreciate it, Your Honor. We are not challenging the policy. This is not the — the challenged conduct in this case. And let me clarify that, please. And we did spell it out in the brief, but perhaps I wasn't clear during my opening argument. The policy is not, again, the challenged conduct. Under the FDCA, we're suing for false arrest and false imprisonment. Under the Louisiana law, the tort of false arrest or imprisonment occurs when one intentionally and unlawfully arrests or totally restrains another against his or her will. So this is what we're arguing. This is what we alleged in the complaint. And the policy only comes into play when the government raises the discretionary function exception. It's only relevant to show that there was no discretion whatsoever. The policy said, don't look at 1357A2, arrest. It didn't specifically say, don't look at 1357, but this is in essence what it did. 1357A2, 8 U.S.C. 1357A2, said, you shall have the power to arrest when you comply with A and you comply with B. The policy is a blank policy saying, everybody gets arrested. You don't look at A. You don't look at B. Everybody gets arrested. Yes, it is true that the statute is discretionary in the sense that the officer, after conducting the analysis, may go one way or the other way. But they don't have discretion to ignore the statute altogether. It's not discretionary to ignore federal statute, which is exactly what they did with that policy. But again, it's not the policy that we're challenging. It's not the investigation that we're challenging. The law is clear in this circuit that investigative activities are usually covered under the discretionary function exception. It's the arrest that we're challenging. Was it a good idea to take Solman off the bus? We don't think so. He had a valid Texas A.D. with an immigration notation on it. Was it a good idea to keep detaining him at the bus station? We don't think so. He provided an image of his H-1B change of status form on his phone. Was it a good idea to take him to the CBP station? We don't think so. The agent had enough information and enough belief that Solman was in the country legally. Was it a good idea to issue the NTA, the Notice to Appear in Immigration Court? No. I think it's a complete waste of everyone's resources. But it could, in fact, have been afforded protection under the discretionary function exception. But the arrest cannot be, because it's in direct violation of 1357a2. The statute says you may arrest only if you have reason to believe that the person is in the country unlawfully and you think that the person is likely to escape. Then you can arrest. It logically follows that if the agent does not believe that the person is in the country legally, he does not have the power to arrest. And again, the policy is only relevant to show that there was a policy directly violating the federal statute. And they had no discretion, the agents did, had no discretions whatsoever to conduct the analysis, to analyze whether Solman was likely to escape, whether Solman was in the country. Agent Wilson believed him. Agent Wilson thought Solman was in the country legally. Everywhere, throughout his deposition, he keeps saying, oh, yeah, I did believe him. But what could I do? He actually did try. I agree. But the policy that they had in place eliminated any discretion whatsoever. So again, just to make sure I'm clear on that, we're not challenging the policy. We're not challenging the investigation. We brought this FDCA claim for unlawful, for false arrest and false imprisonment. And again, the elements are satisfied. Was the arrest unlawful? It was totally unlawful because the agents did not comply with the requirements of 1357. There was no requirement in 1357 to release or to detain, but there was a requirement to analyze, and they didn't do that at all. The policy did not allow them to do so. So it was an unlawful arrest. It was against Solman's will, and it was intentional. There we go. We have the tort of unlawful, of false arrest and false imprisonment, which is actionable under FDCA. All right. Thank you. Mr. Onosky, your case is under submission, and the court will.